```
                  UNITED STATES DISTRICT COURT
                    DISTRICT OF CONNECTICUT

MEG LESLIE,                      :
JOSEPH LESLIE,                   :
   Plaintiffs,                   :
                                 :
                                 :
     vs.                         :
                                 :
MORTGAGE ELECTRONIC              :   Civil No.: 3 05 CV1725 (AVC)
REGISTRATION SYSTEMS, INC.,      :
COUNTRYWIDE HOME LOANS,          :
INC., COUNTRYWIDE HOME LOAN      :
SERVICING, L.P., REINER,         :
REINER, & BENDETT, P.C.,         :
BERNARD D. MCMAHON, DAVID        :
F. BORRINO, JENNIFER S.          :
ALLISON, JANE SCHOLL, JOHN       :
LANGENBACH, JOHN DOE 1,          :
   Defendants.                   :
```

## RULING ON THE DEFENDANTS, JOHN LANGENBACH AND JANE SCHOLL'S MOTION TO DISMISS

This is an action for damages and equitable relief challenging the legality of a Connecticut superior court foreclosure action. The plaintiffs, Meg and Joseph Leslie ("the Leslies"), allege that the defendant, Mortgage Electronic Registrations Systems, Inc. ("MERS"), engaged in unfair trade practices in violation of the Connecticut Unfair Trade Practices Act ("CUTPA"), Conn. Gen. Stat. § 42-110b, and the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 et seq., after the Leslies defaulted on their mortgage payment obligations.

The Leslies allege that the defendants, Jane Scholl and John Langenbach, judges of the Connecticut superior court also violated CUTPA when, according to the Leslies, they conspired to

commit fraud on the court system and violate the Leslies' constitutional rights, inflict emotional distress on them, and promote "MERS' deceptive collection and foreclosure scheme" when Scholl and Langenbach denied the Leslies' motion to strike the foreclosure action and issued a "short calendar notice re. MERS."

Scholl and Langenbach, now move for dismissal of the second amended complaint pursuant to Fed. R. Civ. P. 12(b)(1) for lack of subject matter jurisdiction on the grounds that, among other reasons, the complaint, as to them, is barred by the doctrine of absolute judicial immunity.

For the reasons hereinafter set forth, the court concludes that the doctrine of absolute judicial immunity bars all federal and state claims against Scholl and Langenbach. The motion to dismiss is therefore GRANTED.

## FACTS

The second amended complaint alleges that on or about April 1, 2001, the Leslies filed an application for a residential mortgage with one Shelia Pollard, a loan originator for National City Mortgage Company. On May 30, 2001, upon approval, the Leslies closed on a loan in the amount of $165, 343.00 to finance their purchase of residential real property located at 9 Cherrywood Drive, Ellington, Connecticut. The loan closing documents identified the defendant, Countrywide Home Loans, Inc. ("CHLI") as the lender and the defendant, MERS as the mortgagee

in a nominee capacity for CHLI.

On or about April 2004, Joseph Leslie notified CHLI that he and Meg Leslie would not be able to make their July 2004 mortgage payment.  CHLI told Joseph Leslie to call back after they were delinquent for more than thirty days, at which point workout assistance would become available.  The Leslies did not make their required July 2004 payment.  On August 4, 2004, the Leslies contacted Countrywide Servicing to secure a payment arrangement.

On November 10, 2004, MERS, through its attorneys, the defendants, Reiner, Reiner, & Bendett, P.C., commenced a foreclosure action against the Leslies in the Connecticut superior court.

 On November 17, 2004, the Leslies received the promised workout assistance package from CHLI.  The package required the Leslies to pay $2,459.67 before CHLI would consider furnishing workout assistance.

On November 24, 2004, the defendant, Countrywide Home Loan Servicing, L.P. ("Countrywide Servicing") sent two payoff demand statements to the Leslies.  One stated the "Total Payoff Due" was $166,476.76 and the other stated that the payoff figure was $171,725.26.  On December 17, 2004, Countrywide Servicing sent the Leslies a letter denying workout assistance.

On December 28, 2004, the Leslies filed a motion to strike the foreclosure action.  The motion alleged that MERS "was not

the owner of the subject note, that MERS was acting as an unlicensed debt collector in the state of Connecticut, and that MERS was prohibited by . . . [f]ederal Housing Authority rules and regulations from initiating the foreclosure until prerequisite loan servicing and counseling requirements had been met."

On February 7, 2005, the parties appeared before Scholl to argue the motion to strike.  The second amended complaint alleges that Joseph Leslie asked Scholl to consider the motion as a motion to dismiss "due to the lack of standing of the plaintiff, MERS.  Judge Scholl acknowledged that Joseph Leslie was challenging subject matter jurisdiction in the matter."

On May 25, 2005, "Judge Scholl, acting in her capacity as a judge, issued a [m]emorandum" denying the Leslies' motion.  According to the Leslies, Judge Scholl erred because, in the Leslies' view, MERS, as a matter of law, did not have standing to foreclose pursuant to the ruling in Fleet Bank v. Nazareth, 75 Conn. App. 791 (2003) because MERS was not the owner of the note and mortgage.

Further, the Leslies allege "Judge Scholl knew, or should have known or at least inquired and held an evidentiary hearing" on this issue.  The Leslies also allege that Scholl denied them due process of law by not holding "a trial like hearing" on

4

"issues of fact . . . necessary to the determination of a court's jurisdiction."

On June 9, 2005, the Leslies filed a motion to reargue the motion to strike as a motion to dismiss.  On June 29, 2005, Scholl denied the motion because the Leslies, in defending against foreclosure, "did not attack the status of the [p]laintiff [MERS] as the <u>holder</u> of the note and mortgage." (emphasis added).  On August 22, 2005, MERS voluntarily withdrew the foreclosure action.

The second amended complaint further alleges that

> Judge Jane Scholl met with Judge John Langenbach outside of any courtroom and outside their responsibilities and capacities as Judges or employees of the Judicial Branch of the State of Connecticut, and discussed the issue of standing of MERS as plaintiff in foreclosure cases in light of the [<u>Nazareth</u>] ruling and how to allow entities, through MERS, to continue to foreclose on residents of Connecticut despite the fact that MERS is never the owner of the subject notes or mortgages and therefore never ha[s] standing to foreclose on them.

On December 1, 2004, the "foreclosure committee consisting of all [s]uperior [co]urt [j]udges who regularly do the foreclosure calendar[,]" issued a "notice re. MERS foreclosures." The notice stated:

> In any foreclosure action where a Mortgage Electronic Registration System company is the plaintiff, no Judgment of Foreclosure shall enter unless an assignment of

> mortgage to the holder of the promissory
> note has been recorded on the land records
> and a Motion to Substitute the holder of
> the note as the plaintiff has been granted
> or an affidavit is filed with the court
> that the plaintiff is the actual holder of
> the promissory note.

On or about December 16, 2005, Joseph Leslie spoke with one Kathleen Chase, a "[l]aw [c]lerk of the Connecticut [s]uperior [c]ourt." He inquired about the origination of the short calendar notice regarding MERS foreclosures. The second amended complaint alleges, "Ms. Chase stated that Judge Jane Scholl had a meeting with Judge Langenbach and that after said meeting, Judge Scholl returned with the said Notice in hand. Judge Scholl told Ms. Chase to place the Notice on subsequent Short Calendars."

On December 16, 2005, Joseph Leslie sent Judge Langenbach a Freedom of Information Act ("FOIA") request for all documents related to MERS foreclosures and the short calendar notice. On January 4, 2006, Judge Langenbach replied that the inquiry was "'inappropriate and unduly burdensome' and no requested information [would be] provided."

On or about January 9, 2006, Joseph Leslie sent a second, more defined request. On or about February 24, 2006, Judge Langenbach replied to Joseph Leslie's request with the above-quoted "notice re. MERS foreclosures."

On November 9, 2005, the Leslies filed their first complaint in this action. On February 28, 2006, the Leslies filed their

6

first amended complaint, which named Scholl and Langenbach as defendants.  On April 24, 2006, the judges filed the within motion to dismiss the complaint as it pertains to them.

## STANDARD

A court must grant a motion to dismiss brought pursuant to 12(b)(1) where a plaintiff has failed to establish subject matter jurisdiction.  Golden Hill Paugussett Tribe of Indians v. Weicker, 839 F.Supp. 130, 136 (D. Conn. 1993).  In analyzing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b) (1), the court must accept "all of the plaintiffs factual allegations in the complaint as true and draw inferences from those allegations in the light most favorable to the plaintiff."  Courtenay Communications Corp. v. Hall, 334 F.3d 210, 213 (2d Cir. 2003).

For the purposes of 12(b)(1), the burden is on the plaintiffs to establish that jurisdiction exists.  Makarova v. U.S., 201 F.3d 113, 128 (2d Cir. 2000).  Dismissal is inappropriate "unless it appears beyond doubt, even when the complaint is liberally construed, that the plaintiff can prove no set of facts that would entitle him to relief."  Id.  In making this determination, "[the Court's] task is necessarily a limited one.  The issue is not whether the plaintiff will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims."  Scherer v. Rhodes, 416 U.S. 232, 236 (1974).

**DISCUSSION**

1. <u>Absolute Judicial Immunity</u>

Scholl and Langenbach now move to dismiss the second amended complaint on grounds of absolute judicial immunity. Specifically, they argue that any cause of action arising from Scholl's decision to deny the Leslies' motions, as well as Langenbach and Scholl's actions in issuing a "short notice calendar order re: MERS" are shielded by the doctrine of absolute judicial immunity.

In response, the Leslies maintain that the judges are not entitled to absolute judicial immunity because they are sued in their individual capacities. Moreover, in the Leslies' view, the actions condemned here were not judicial in nature and Scholl and Langenbach acted in the complete absence of jurisdiction.

Judges are immune from suit for exercising their judicial authority. <u>See, e.g.</u>, <u>Mireles v. Waco</u>, 502 U.S. 9 (1991); <u>Forrester v. White</u>, 484 U.S. 219 (1988); <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978). "Despite the unfairness to litigants that sometimes results, the doctrine of judicial immunity is thought to be in the best interests of 'the proper administration of justice . . . [, for it allows] a judicial officer, in exercising the authority vested in him [to] be free to act upon his own convictions without apprehension of personal consequences to

himself.'  Bradley v. Fisher, 13 Wall., at 347." Stump, 435 U.S. at 362.

Further,

> judicial immunity is not overcome by allegations of bad faith or malice, the existence of which ordinarily cannot be resolved without engaging in discovery and eventual trial. Pierson v. Ray, 386 U.S. at 554 ('immunity applies even when the judge is accused of acting maliciously and corruptly.')  [See also,] Harlow v. Fitzgerald, 457 U.S. 800, 815-819 (1982) (allegations of malice are insufficient to overcome qualified immunity.).

Mireles v. Waco, 502 U.S. 9, 11 (1991).  "[A]n allegation that an act was done pursuant to a conspiracy has no greater effect than an allegation that it was done in bad faith or with malice, neither of which defeats a claim of absolute immunity." Dorman v. Higgins, 821 F.2d 133, 139 (2d Cir. 1987).  However, a judge is not immune for

> nonjudicial actions, i.e., actions not taken in the judge's judicial capacity. Forrester v. White, 484 U.S. at 227-229; Stump v. Sparkman, 435 U.S. at 360. Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction. Id. at 356-357; Bradley v. Fisher, 13 Wall. at 351.

Mireles, 502 U.S. at 11-12.

The classification of a judge's actions as judicial or nonjudicial is a question of law for the court. Crooks v. Maynard, 913 F.2d 699, 700 (9th Cir. 1990).  See also, Mireles,

9

502 U.S. at 11-12; Forrester v. White, 484 U.S. 219 (1988).

    A. Nonjudicial Acts

An act is judicial if "it is a function normally performed by a judge, and . . . the parties . . . dealt with the judge in a judicial capacity." Mireles, 502 U.S. at 12. The "relevant inquiry is the 'nature' and 'function' of the act, not the 'act itself.'" Mireles v. Waco, 502 U.S. 9, 13 (1991). "A judge is not protected under the doctrine of judicial immunity, however, if the action in question is not judicial in nature, as when a judge performs an administrative, legislative, or executive act." Huminski v. Corsones, 396 F.3d 53, 75 (2d Cir. 2005).

The Leslies allege "Judge Scholl, acting in her capacity as a judge, issued a [m]emorandum" denying the Leslies' motion. In this case, the function of Judge Scholl's denial of the motion to strike and/or dismiss was judicial and is protected from suit. See Mireles, 502 U.S. at 11-13; Forrester v. White, 484 U.S. 219, 224 (1988).

Further, Scholl and Langenbach are also immune from suit related to the MERS short calendar notice. Although the Leslies allege "Judge Jane Scholl met with Judge John Langenbach outside of any courtroom and outside their responsibilities and capacities as Judges or employees of the Judicial Branch of the State of Connecticut," the meeting concerned judicial policy with respect to foreclosure actions. Like "[a] court's control of its

10

docket . . . is a judicial act because it 'is a part of [a court's] function of resolving disputes between parties,'" the meeting and notice were judicial in nature. Huminski v. Corsones, 396 F.3d 53, 76 (2d Cir. 2005).

Moreover, to the extent the second amended complaint alleges that Scholl and Langenbach conspired to use the short calendar notice to defraud Connecticut citizens of their homes, "conclusory, vague, or general allegations of conspiracy . . . [do not pierce the shield of immunity and] cannot withstand a motion to dismiss. Leon v. Murphy, 988 F.2d 303, 311 (2d. Cir. 1993). See e.g., Dorman v. Higgins, 821 F.2d 133 (2d Cir. 1987).

B.   Jurisdiction

The second exception to absolute judicial immunity is when a judge acts in "the complete absence of all jurisdiction." Mireles v. Waco, 502 U.S. 9, 11 (1991). A complete absence of jurisdiction occurs only when the court in question has no general subject matter jurisdiction over the type of case at bar. For example, if a

> probate court, invested only with authority over wills and the settlement of estates of deceased persons, should proceed to try parties for public offences, jurisdiction over the subject of offences being entirely wanting in the court, and this being necessarily known to its judge.

Tucker v. Outwater, 118 F.3d 930, 934 (2d Cir.), cert denied, 522 U.S. 197 (1997), citing Bradley v. Fisher, 80 U.S. 335, 352

(1872); see <u>Stump v. Sparkman</u>, 435 U.S. 349 (1978).  Hence, "where jurisdiction over the subject-matter is invested by law in the judge, or in the court which he holds, the manner and extent in which the jurisdiction shall be exercised are . . . as much questions for [the judge's] determination as any other questions involved in the case."  <u>Bradley</u>, 80 U.S. at 351.  <u>See also</u>, <u>Ross v. Arnold</u>, 575 F. Supp. 1494 (E.D. Wis. 1983) (a judge having subject matter jurisdiction is absolutely immune, even though his judicial action is in excess of his vested jurisdiction or is otherwise erroneous).

"If judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" <u>Mireles</u>, 502 U.S. 9, 12-13 (1991).  For a suit against a judge to survive a motion to dismiss, the judge must have acted in the complete absence of authority.

This is simply not the case here.  Scholl is a Connecticut superior court judge and therefore has jurisdiction over foreclosure cases.  Scholl, in connection with the original foreclosure action, properly considered the issue of whether MERS had standing.  Disagreement with her decision is an issue for appeal, not private suit.  Scholl acted within the bounds of the doctrine of judicial immunity.

**CONCLUSION**

12

For the foregoing reasons, defendants Scholl and Langenbach's motion to dismiss (document no. 33) is GRANTED.

It is so ordered this 12th day of July, 2006 at Hartford, Connecticut.

_____
Alfred V. Covello
United States District Judge